IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Joseph A. Heffernan and May L. Baird on behalf of their son, T.H., | ) ) ) | C/A No.: 3:10-302-JFA |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **ORDER** |
| Sumter County School District 17, | ) ) ) | |
| Defendant. | ) ) | |

Through this action, plaintiffs Joseph A. Heffernan and May L. Baird (the "Parents") seek reimbursement for education services provided to their son, T.H., in a home-based placement after Sumter County School District 17 allegedly failed to provide T.H. with a free and appropriate public education ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1450. The Parents also seek a declaration that a home-based placement has been the appropriate "stay-put" placement since February 12, 2007. This matter is before the court on what the court will construe as the Parents' motion to invoke the stay-put injunction pursuant to 20 U.S.C. § 1415(j). The parties have each detailed their respective positions in briefs and stipulated to certain facts. The court heard oral argument and received testimony at a August 20, 2010 hearing, where the court took the matter under advisement. Because the court finds that the District has not carried its burden to show that the parties "otherwise agree[d]" to change the stay-put placement, the court concludes that the current stay-put placement is the home-based placement.

I.   Factual and Procedural Background

On September 26, 2006, T.H.'s Parents removed him from school for the first time. The Parents thereafter initiated the IDEA's due process hearing process, alleging that the District denied T.H. FAPE and seeking approval for a home-based educational placement. The hearing officer determined that the District was fulfilling its obligations under the IDEA, however in February 2007 a State Review Officer ("SRO") found otherwise, and agreed with the Parents that a home-based placement was appropriate. In response to the SRO's ruling, the District initiated an action in this court, though was unsuccessful ("Heffernan I"). In a July 20, 2009 order, the court affirmed the SRO's decision and its determination that the home-based placement is the stay-put placement until such time as the District is able to prove that it has an appropriate ABA therapy program. The court's decision in Heffernan I is currently on appeal to the Fourth Circuit Court of Appeals.

Subsequent to the set of circumstances faced by the hearing officer in his February 2007 decision (and which formed the basis for this court's July 2009 Heffernan I decision), the parties engaged in a process to create an individual education program, or IEP, pursuant to the IDEA. On June 10, 2008, Parents' counsel wrote to the District to outline several steps the Parents wished the District to take in order to develop what they characterized as a "meaningful and workable IEP." (Stip. ¶ 8.) These steps were implemented and completed by the District between July and December 2008. On February 11, 2009, the parties met and an IEP document was produced. However, the Parents refused to sign it and requested

2

revisions. The parties met again on March 12, 2009, and a revised IEP document was produced. However, again, the Parents expressed reservation and refused to sign it. On May 6, 2009, the parties met, another IEP document was produced, and again the Parents refused to agree to it.

Despite the Parents' reluctance to sign an IEP, they did express, through a May 12, 2009 letter from their counsel, an interest in T.H. attending public school for the remaining weeks of the 2008-2009 school year. That letter expressly indicated that the Parents did not consent to a change in the stay-put location from the Parents' home to the school. However, T.H. never made it to those last weeks of the 2008-2009 school year due to circumstances unattributable to either the Parents of the District—T.H.'s teacher suffered from health problems that the parties agree prevented his attendance.

On August 17, 2009, the Parents advised the District, through a letter from their counsel, that they planned for T.H. to begin the 2009-2010 school year at public school. They indicated that "they are relying on the District's representation to them at the IEP meeting that the District has a program in place that is both capable of educating [T.H.] and keeping both [T.H.] and other students safe." (Stip. Ex. 10, ECF No. 27-10.) Somewhat cryptically, the letter ends with: "Should this not be the case, the District will be responsible for any consequences." (Id.) This letter did not contain an express statement about the Parents' position on the stay-put issue. Five weeks into the school year the parties met to conduct a "re-evaluation review meeting." A written summary (the "Summary Document")

3

of the meeting included the statement: "Placement in the Autism program is appropriate." And the Summary Document Joseph Heffernan's signature in two places.

T.H. continuously attended public school during the fall 2009 semester until his Parents removed him on December 7, 2009. The parties agree that the reason for his withdrawal is of no moment in determining the stay-put issue. On December 10, 2009, the parties attended an IEP meeting scheduled prior to the December 7 withdrawal. At the meeting, the Parents requested a home-based placement. The request was denied on the basis that T.H.'s current placement is in school. This suit followed.

II.  Legal Standard

The IDEA provides that during the pendency of a due process proceeding "conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j); Wagner v. Bd. of Educ., 335 F.3d 297 (4th Cir. 2003). This provision has been characterized as an "automatic injunction" to be imposed without regard to irreparable harm, likelihood of success on the merits, or a balancing of the hardships. Wagner, 335 F.3d at 301. Section 1415(j) "guarantees an injunction that prohibits a school board from removing the child from his or her current placement during the pendency of the proceedings." Id. The Fourth Circuit has clearly set out the scope of the relevant inquiry: "[W]hen presented with an application for section 1415(j) relief, a district court should simply determine the child's then-current educational placement and enter an order

4

maintaining the child in that placement." Wagner, 335 F.3d at 301.

Here, both parties agree, and the court finds, that the appropriate stay-put placement as of July 20, 2009, was the home-based placement. The question thus becomes whether the stay-put placement has changed since July 20, 2009. Once established, a stay-put placement may only be changed in one of four ways: (1) by an agreement of the parties; (2) by an unappealed decision of a hearing officer; (3) by a decision of an SRO that agrees with the child's parents; or (4) by a determination by a court on appeal from an SRO's decision. Arlington Cent. School Dist. v. L.P., 421 F. Supp. 2d 692, 697 (S.D.N.Y.), 34 C.F.R. § 300.518; see also Burlington, Mass. v. Dep't of Educ., 471 U.S. 359, 369–70 (1985) (finding that decision by state or local educational agency agreeing with parents constitutes agreement under predecessor statute); Drinker ex rel Drinker v. Colonial School Dist., 78 F.3d 859 (3d 1996) (finding that agreement to alter stay-put placement must be an affirmative agreement that explicitly changes the current educational placement; waiver inapplicable in stay-put context). No hearing officer, SRO, or other court has altered the stay-put placement since July 20, 2009. Accordingly, the court's inquiry turns to whether the parties have "otherwise agree[d]" to change T.H.'s educational placement. See 20 U.S.C. § 1415(j). As the party challenging home-based placement established by the SRO (when he agreed with the Parents), the District bears the burden of proving that the Parents have agreed to the school-based placement. See Honig v. Doe, 484 U.S. 305, 328 n.10 (1988) ("[T]he burden rests with the school district to demonstrate that the educational status quo must be altered.").

5

III. Discussion

The District makes two arguments that the Parents have agreed to the school-based placement. First, the district contends that when the Parents placed T.H. back into public school in August 2009, their conduct constituted an agreement to change the stay-put placement from the home-based placement to the school pursuant to the proposed May 6 IEP. Second, the District contends that Joseph Heffernan's signature on the October 6, 2009 Summary Document (see Stip. Ex. 10, ECF No. 27-15) manifested his agreement to change T.H.'s stay-put placement. The court will address these arguments seriatim.

    A.    Agreement Through Conduct

The District's initial argument is that the Parents agreed to the proposed May 6, 2009 IEP for the 2009-2010 school year (Stip. Ex. 8, ECF No. 27-8) by voluntarily causing T.H. to attend public school pursuant to the terms of that IEP. (ECF No. 26 at 9.) The Parents argue that their conduct in placing T.H. in public school in no way manifested their affirmative agreement to change T.H.'s educational placement and that only affirmative agreement, in writing, should suffice to change the stay-put placement.

The District's argument rests on the idea that a student's stay-put placement should be determined with reference to the last-functioning IEP. As an abstract statement of law, that position is generally correct. See Susquenita School Dist. v. Raelee S., 96 F.3d 78, 84 n.6 (3d Cir. 1996) ("If an IEP has been implemented, then that program's placement will be the one subject to the stayput provision."). However, an IEP may be implemented without

6

agreement between the parties; the statute at issue clearly requires agreement. Bd. of Educ. v. Brett Y., No. 97-1936, 1998 WL 390553, at *9 (4th Cir. June 26, 1998) (finding that parents need not agree with the substantive content of an IEP for it to be properly in effect). Because agreement is not a condition precedent to an IEP being in effect, it necessarily follows that the existence of a functioning IEP[1] is insufficient to abrogate the plain statutory command that the parties "otherwise agree" prior to a change in stay-put placement.

During the fall 2009 semester, T.H. appears to have been educated pursuant to the May 6, 2009 IEP. The May 6 IEP was never executed by the Parents, and the Parents detailed their objections to it in a May 12, 2009 letter to the District (Stip. Ex. 9, ECF No. 27-9). An August 17, 2009 letter indicated that the Parents intended to have T.H. attend public school, though also displayed open skepticism of the District's ability to perform pursuant to the May 6 IEP. Specifically, the Parents indicated that they wished to transition T.H. into public school, rather than enroll him, and expressed only that the District "may" be able to handle the transition process. However, the Parents did more than simply question the the District's ability to adequately perform the IEP by letter. The Parents repeatedly insisted on, and eventually obtained, the oversight of an outside consultant to determine if the District was delivering FAPE (Stip. Ex. 13, ECF No. 27-13). Taking the voluntary placement of T.H. into public school in light of the May 12 and August 17 letters, and the Parents' insistence on an expert to determine if the District was delivering FAPE, the court

---

[1]The court assumes, without deciding, that the May 6, 2009 IEP was in effect.

cannot conclude that the Parents explicitly manifested an affirmative intent to relinquish their stay-put rights and agree to the school-based placement.

B. The Import of the Prior Written Notice Summary

The District makes much of Joseph Heffernan's two signatures on the Summary Document. The Summary Document indicates as its reason for undertaking no additional testing, that "[p]lacement in the Austim program is appropriate," and that "[d]isability and placement was found appropriate." (ECF No. 27-15 at 3.) However, there is nothing in the Summary Document that explicitly manifests an intent to change T.H.'s stay-put placement. Reviewing the Summary Document, the court finds that the first signature line could be reasonably construed as simply indicating that Mr. Heffernan attended the meeting; that he received a copy of the "Parents Guide to Special Education" (See Id.); or that the District is on the right track with regard to treatment. However, nothing about the first signature manifests a clear and explicit agreement to change the stay-put placement. The import of the second signature, on the next page, is more clear, but of no more help to the District's position. That signature stands for the position that: "The student continues to have a disability defined in Criteria for Entry into Programs of Special Education for Students with Disabilities in the category of Autism and needs special education and related services." (Id. at 4.) The court finds that Mr. Heffernan's agreement that his child still has autism is a far cry from an explicit agreement to change the stay-put placement.

IV. Conclusion

Because the court finds that the Parents' conduct in causing T.H. to attend public school did not unambiguously and explicitly constitute an agreement to change the stay-put placement, and because the Summary Document fails to show the same, the court finds that the District has failed to show that the parties agreed to alter the stay-put placement from the home-based placement. Accordingly, by operation of § 1415(j), the District is automatically enjoined from altering such placement.

IT IS SO ORDERED.

August 24, 2010
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge